# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| **BALSAM COFFEE SOLUTIONS INC.** § | | |
| § | | |
| v. § | NO. 6:09-CV-89 | |
| § | | |
| **FOLGERS COFFEE COMPANY, et al.** § | | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Folgers Coffee Company, J.M. Smucker Company, Kraft Foods Inc., Kraft Foods Global Inc., Kraft Foods Holding Inc., and Melitta USA Inc.'s (collectively "Defendants") Motion to Dismiss Under Rule 12(B)(1) for Lack of Subject Matter Jurisdiction (Doc. No. 48). The motion was fully briefed (Doc. Nos. 64, 68, 70). The Court heard argument on September 29, 2009. Having fully considered the parties' submissions and argument, the Court **DENIES** Defendants' motion.

## BACKGROUND

United States Patent No. 6,861,086 ("the '086 patent") issued on March 1, 2005. The patent identifies Robert Buckingham and William Anker as inventors. 1361215 Ontario Inc., a Candian corporation that later changed its name to Balsam Coffee Solutions Inc. ("Balsam"), is listed as the original assignee.[1] On June 9, 2005, Balsam assigned the '086 patent to San Marco Roasters Inc. ("San Marco").[2] The same day, this assignment was recorded with the United State Patent & Trademark Office ("USPTO").

In or around September 2006, Mr. Buckingham and Mr. Anker discussed ownership of

---

[1] For clarity purposes, the Court will refer to both 1361215 Ontario Inc. and Balsam Coffee Solutions Inc. as "Balsam."

[2] San Marco is described by the parties as Balsam's "sister company." Each inventor held a 50% interest in each company. Mr. Buckingham is the President of both Balsam and San Marco. Mr. Anker is an officer of each company.

certain intellectual property, including the '086 patent, and their desire to ensure that it remain with either San Marco or Balsam. Pursuant to their discussions, and without the aid of an attorney, Mr. Buckingham and Mr. Anker executed an agreement on September 30, 2006, that stated in pertinent part:

> 1. [San Marco] intends to purchase US patent numbers 6,861,086 and 6,663,284 ["the '284 patent"] with the trademark 2,725,764 and agrees to pay [Balsam] based on the terms set out on invoice number 001604 dated September 30, 2006.
> 2. If it appears [San Marco] will have problems paying for the above noted items and at [Balsam's] sole discretion, this agreement may be terminated and the rights and ownership shall remain with [Balsam] upon giving notice and returning any payments made to them in regards to the above noted invoice.
> 3. Ownership and all rights in respect of the above noted patents and trademarks shall remain with [Balsam] until paid in full.

PL.'S RESP. at EX. G ("the 2006 agreement").

Invoice number 001604 provided a sale price of $300,000 plus tax. PL.'S RESP. at EX. H. Sometime between September 2006 and early 2008, San Marco solicited offers for purchase of the '086 and '284 patents.[3] DEFS.' REPLY at EX. 1. These solicitations represented that San Marco possessed "100% ownership interests in patents relating to the roasting, grinding and packaging of coffee." *Id.* On August 27, 2008, Balsam determined San Marco was incapable of performing under the terms of the 2006 agreement and terminated that agreement. PL.'S RESP. at EX. I.

On February 27, 2009, Balsam filed the present suit against Defendants alleging infringement of the '086 patent (Doc. No. 1). On July 31, 2009, Defendants filed the present motion (Doc. No. 48) and also filed a declaratory judgment action in the Southern District of Ohio. *See J.M.*

---

[3] The provided solicitation letter is not dated but states that San Marco "intend[ed] to close on the Sale in the second quarter of 2008" suggesting the letter was sent no later than April 2008.

2

*Smucker Co. v. San Marco Roasters Inc.*, 1:09-cv-541 (S.D. Ohio 2009). In a so-called "belt-and-suspenders" response, San Marco assigned the '086 patent to Balsam on August 3, 2009, PL.'S RESP. at Ex. J, and filed a second suit against Defendants in the Eastern District of Texas. *See Balsam Coffee Solutions, Inc. v. Folgers Coffee Co.*, 6:09-cv-351 (E.D. Tex. 2009).

### **PARTIES' CONTENTIONS**

Defendants state that, after the commencement of the present suit, they learned from USPTO records that the '086 patent had been assigned to San Marco. DEFS.' MOT. at 2. In response to an interrogatory as to the current and historical ownership of the patent, Balsam responded that the patent had been assigned to Balsam and subject to a sales agreement with San Marco, but that in August 2008 Balsam had reasserted its rights. *Id.* at 3-4. Defendants contend there is no evidence that Balsam owned the '086 patent when it filed the present suit and therefore lacked standing to do so. *Id.* at 3. Accordingly, Defendants argue the Court lacks subject matter jurisdiction over the present suit and must dismiss it. *Id.* at 7.

Balsam responds that the 2006 agreement evidences the intent of Balsam and San Marco to vest ownership of the '086 patent in Balsam. PL.'S RESP. at 1. Balsam argues that the Court cannot ignore the 2006 agreement and must give effect to the intent reflected therein. *Id.* at 2. Balsam contends that it owned the '086 patent as early as September 2006 and no later than August 2008. *Id.* at 5. Alternatively, Balsam offers a variety of contract law theories, applicable under either Canadian or Texas law, to argue the original 2005 agreement must be read in conjunction with the 2006 agreement. *Id.* 7-15.

Defendants respond that the conduct of Balsam and San Marco contradicted their alleged intent that Balsam own the patent. DEFS.' REPLY at 2-4. Defendants argue that solicitations for sale

3

of the '086 patent reflected San Marco's understanding that it possessed title to the patent. *Id.* at 2-4. Defendants further argue that Balsam's interpretation of the 2006 agreement is illogical, that its contractual theories fail for lack of intent, and that it has failed to provide sufficient evidence of an assignment to Balsam. *Id.* at 4–9.

In its sur-reply, Balsam argues that the intent to transfer ownership of the '086 patent back to Balsam was implicit in the 2006 agreement. PL.'S SUR-REPLY. at 2-4. Balsam further argues that any legal deficiencies in the 2006 agreement render it voidable, but only at the request of either Balsam or San Marco. *Id.* at 5. Finally, Balsam asserts that the August 2009 assignment and duplicative lawsuit were precautionary measures in anticipation of a forum dispute and not a concession of lack of standing. *Id.* at 7-9.

## **LEGAL STANDARD**

A party may move to dismiss a case for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). If the Court determines it lacks subject matter jurisdiction over suit, it must dismiss the case. FED. R. CIV. P. 12(h)(3). "[D]ismissal for lack of subject matter jurisdiction is a procedural question not unique to patent law" and therefore the Court should apply the law of the Fifth Circuit. *Madey v. Duke Univ.*, 307 F.3d 1351, 1358 (Fed. Cir. 2002). "A motion under 12(b)(1) should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Home Builders Ass'n v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). The party asserting jurisdiction bears the burden of establishing it. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). In a factual attack, the plaintiff's allegations are not entitled to a presumption of truthfulness. *Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir. 1981).

4

Only "[a] patentee shall have remedy by civil action for infringement of his patent." 35 U.S.C. § 281 (2007). "The word 'patentee' includes not only the patentee to whom the patent was issued but also the successors in title to the patentee." 35 U.S.C. § 100(d) (2007). A suit for infringement cannot be maintained if the plaintiff does not possess title to the asserted patent when the suit is commenced. *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1310 (Fed. Cir. 2003).

"[P]atent rights are not acquired unless authorized by and acquired in the manner prescribed by statute." *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1337 (Fed. Cir. 2007). Pursuant to 35 U.S.C. § 261, an assignment of patent rights must be executed in writing. *Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774, 780 (Fed. Cir. 1996), *as amended* 104 F.3d 1296 (Fed. Cir. 1996) (holding writings memorializing an agreement to assign at some time in the future were insufficient to transfer ownership); *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1580 (Fed. Cir. 1991) (holding writing memorializing "an agreement to assign . . . does not rise to the level of a present assignment of an existing invention, effective to transfer all legal and equitable rights therein"). Whether an assignment is recorded with the USPTO may be relevant to a party's rights against any subsequent *bona fide* purchaser, but is irrelevant to a determination of ownership or standing. 35 U.S.C. § 261 (2007); *see also Gaia Tech., Inc.*, 93 F.3d at 778 n.3 (stating "the mere fact that an assignment was recorded in the PTO does not, without more, prove that a valid assignment actually took place").

## DISCUSSION

The Court must determine whether title in the '086 patent was vested in Balsam at the time it filed the present suit. When Balsam executed the 2005 assignment to San Marco, DEFS.' MOT.

at Ex. C, title to the '086 patent was vested in San Marco. The following year, however, Balsam and San Marco entered into the 2006 agreement. PL.'S RESP. at EX. G. The Court must interpret the 2006 agreement to give effect to Balsam and San Marco's intent. *See Mustang Tractor & Equip. Co. v. Liberty Mut. Ins. Co.*, 76 F.3d 89, 91 (5th Cir. 1996) (stating that under Texas law, the "courts strive to effectuate the intentions of parties as they are expressed in a contract"); *see also Dunn v. Chubb Ins. Co. of Canada*, [2009] O.J. No. 2726, at ¶ 32 (stating "[t]he primary goal of contractual interpretation is to give effect to the intentions of the parties").[4]

Contrary to Defendants' argument, the conduct of Balsam and San Marco did not evidence intent that title to the patent remain with San Marco. The plain language of the 2006 agreement evidences intent that Balsam immediately possess title to the '086 patent and hold it until San Marco had satisfied certain conditions. Unlike the agreements in *Gaia* or *Arachnid* which evidenced an agreement to assign in the future, the agreement here intended a present transfer of all legal and equitable rights.

San Marco's solicitation for purchasers of the patent is consistent with this intent. At the time the solicitations were made, the 2006 agreement was in effect. Had San Marco found a buyer, it could have satisfied the terms of the 2006 agreement, obtained ownership of the '086 patent, and transferred that ownership to the buyer.

Finally, the August 2008 letter from Balsam to San Marco that terminated the 2006 sales agreement shows that the companies intended ownership to reside with Balsam. There is nothing to indicate that San Marco disputed Balsam's ownership of the '086 patent or its exercise of

---

[4] The Court finds it would reach identical conclusions applying either Texas or Canadian law, and therefore declines to opine as to which controls its interpretation of the 2006 agreement.

authority to terminate the 2006 agreement. The companies' conduct is entirely consistent with the intent evidenced by the 2006 agreement.

Giving effect to the intent of Balsam and San Marco, the Court interprets the 2006 agreement to vest ownership of the '086 patent in Balsam. The 2006 agreement satisfies the writing requirement under § 261. That the assignment was not recorded with the USPTO is irrelevant to the present inquiry. *See* 35 U.S.C. § 261 (2007).

Defendants urge the Court to treat the 2006 agreement as void *ab initio*, i.e. that it was a legal nullity with no effect on ownership of the '086 patent. DEFS.' REPLY at 4-6; DEFS.' REPLY at 5 n.5. Defendants argue the transaction was illogical and that the language of the 2006 agreement evidences mutual mistake between the parties. *Id.* Although there may be deficiencies in the contract, the 2006 agreement is at most voidable by an adversely affected party, i.e. Balsam or San Marco. *See* RESTATEMENT (SECOND) OF CONTRACTS § 152 (1981); *cf. Smith v Lagerstam*, No. 03-05-275-CV, 2007 Tex. App. LEXIS 5722, at *10 (Tex. App.-Austin, July 19, 2007, no pet.). Neither party to the contract has attempted to void or otherwise set aside the 2006 agreement. Defendants were not a party to the contract and may not void the agreement at their option.

Therefore, the Court finds a writing assigning the '086 patent from San Marco to Balsam was executed on September 30, 2006. As of that date, Balsam owned the patent and had standing to sue for infringement of it. The present suit, filed on February 27, 2009, commenced after ownership was vested in Balsam. Therefore, Balsam had standing to bring the present suit and Defendants motion should be denied.

## **CONCLUSION**

For the reasons stated above, the Court **DENIES** Defendants' motion.

**So ORDERED and SIGNED this 13th day of October, 2009.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE